IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | |
| | : | |
| v. | : | CRIMINAL ACTION NO. |
| | : | 1:24-cr-00195-LMM-LRS |
| | : | |
| MARCELLO C. BANES and | : | |
| STEPHANIE R. LINDSEY, | : | |
| | : | |
| | : | |
| Defendants. | : | |

# **ORDER**

This matter is before the Court on the Magistrate Judge's Report and Recommendation, Dkt. No. [83], in which the Magistrate Judge recommends denying Defendants' motions to partially dismiss the indictment, Dkt. Nos. [34, 36]. Defendants filed objections to the Report and Recommendation. Dkt. No. [87]. After due consideration, the Court enters the following Order.

## I.   **LEGAL STANDARD**

The Court reviews a Magistrate Judge's Report and Recommendation for clear error if no objections are filed. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59. If a party files objections, however, the Court must consider de novo any part of the Magistrate Judge's disposition that is the subject of a proper objection. Id. On de novo review, the district judge "decide[s] the case based on an independent

review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." Charles Alan Wright, et al., 12 Federal Practice & Procedure § 3070.2 n.2 (2d ed. 2014); accord Robertson v. All Am. Quality Foods, Inc., 246 F. Supp. 3d 1365, 1371 (N.D. Ga. 2017) ("[T]he district judge must 'give fresh consideration to those issues to which specific objection has been made by a party.'" (quoting Jeffrey S. by Ernest S. v. State Bd. of Educ. of State of Ga., 896 F.2d 507, 512 (11th Cir. 1990))).

## II.   BACKGROUND[1]

Four Georgia counties—Jasper, Morgan, Newton, and Walton—established a joint development authority ("JDA") in 1999. The purpose of the JDA was to bring industries to the area and to create jobs. In 2000, the JDA purchased 1,600 acres of land in an area approximately 30 minutes east of metro Atlanta to develop a mixed-use master-planned community known as Stanton Springs.

At some point, Defendant Marcello C. Banes was appointed as a board member of the JDA by virtue of his position as Chairman of the Newton County Board of Commissioners. Defendant Stephanie R. Lindsey was a longtime friend of Banes and was an attorney, a licensed real-estate broker, and the owner of CSL Realty Group ("CSL").

---

[1] For the purposes of this Order, the Court accepts as true the facts set out in the superseding indictment, Dkt. No. [54], and views them in the light most favorable to the government. See United States v. deVegter, 198 F.3d 1324, 1327 (11th Cir. 1999) (setting out the standard of review on appeal).

Among the 1,600 acres in Stanton Springs, one 40.328-acre tract was planned to be developed for commercial, retail, and hospitality purposes. Although the JDA owned the tract, third-party Stanton Springs, LLC, had a contractual option to purchase all or part of the tract from the JDA at a set price, contingent on approval of the sale by a vote of the JDA's board. The JDA hired TPA Group to market the tract.

An entity referred to as Company A was interested in purchasing the tract. On or about May 28, 2018, Banes, using his Newton County email address, emailed Company A a topological survey of approximately 29.3 acres of the tract, and on June 14, 2018, he emailed Company A another topological survey of the entire 40.328-acre tract. A couple of weeks later, Company A made an offer to purchase 29 acres of the tract, and on July 2, 2018, Banes had his assistant email the offer to a representative of TPA group. The sale was contingent on the JDA board voting to approve the sale of the land from the JDA to Stanton Springs, LLC, with the understanding that Stanton Springs, LLC, would sell the land to Company A.

Over the course of several days in late August and early September 2018, Banes, using his personal email address, facilitated the execution of a brokerage agreement between Company A and Lindsey's company CSL whereby Company A would pay CSL a $150,000 commission upon closing of the sale of the 29.3 acres represented in the topological survey Banes had emailed to Company A. At the

3

time, Banes and Lindsey misled Company A into believing that the commission was for Lindsey only, not Banes.

On or about October 10, 2018, Company A and Stanton Springs entered into an agreement for Company A to purchase the entire 40.328 acres identified in the second survey Banes had sent to it. In the agreement, the parties acknowledged that Stanton Springs did not then own the land and that it first had to exercise its contractual right to buy the land from the JDA and acquire it before the sale to Company A could close. Lindsey did not participate in negotiating the deal, and Company A represented in the purchase agreement that it did not have a broker.

At a JDA board meeting taking place in November 2018, a representative of TPA Group introduced Company A's team as the proposed purchaser and developer. Banes never disclosed to the JDA that Company A would pay $150,000 to CSL upon Company A's acquisition of the land. In January 2019, the JDA board, including Banes, voted unanimously to authorize the sale to Stanton Springs, LLC, with the understanding that Company A would then purchase the property from Stanton Springs.

The sale of the land from Stanton Springs, LLC, to Company A closed on or about March 1, 2019. Lindsey's CSL commission was not listed on the closing statement, and she had performed little to no work related to Company A's purchase of the land. Nevertheless, a few days after closing, Company A paid CSL

the agreed-upon $150,000 commission. Lindsey deposited the check into CSL's bank account.

A little more than a week before the closing, Banes had opened LatReb Logistics, LLC ("LatReb"), wholly owned by him, with Lindsey as registered agent. About two weeks after the closing, Lindsey wrote a $100,000 check from the CSL bank account to LatReb; Banes deposited the check in a new LatReb bank account he had opened; and Banes then transferred $75,000 to a new personal account he had opened. A couple of months later, Banes transferred $4,988 more from the LatReb account to his new personal account.

About a month after that, in June 2019, Banes transferred $80,356.99 from his new personal account to a preexisting personal account and transferred $4,000 from the LatReb account to the preexisting personal account. A few days later, he wired $87,788.76 from his preexisting personal account to a closing attorney's IOLTA account as part of the purchase of his new home.

In July 2019, Lindsey wrote a $28,000 check from the CSL account to Company B for basement and foundation work on Banes's new house. About a year later, Banes and Lindsey entered into an operating agreement for LatReb, giving Banes a 51% interest and Lindsey a 49% interest.

Later, in May 2023, Banes discussed Company A's purchase of the land with an FBI special agent. The agent asked Banes whether Company A's representative had "anybody representing him at all, like did he have an attorney,

did he have a real estate agent, anybody like that?" Banes responded that he did not know. The agent also asked Banes whether Lindsey was "involved in any of the real estate transactions with the JDA." Banes answered, "I don't think so."

In June 2024, a federal grand jury indicted Banes and Lindsey under 18 U.S.C. § 1957 on charges of conspiracy to commit money laundering of funds derived from wire fraud, in violation of 18 U.S.C. § 1343, and services wire fraud, in violation of 18 U.S.C. §§ 1343 and 1346 (Count 1); under 18 U.S.C. § 1957 on charges of transactional money laundering of the funds derived from wire fraud and honest services wire fraud (Count 4); and under 18 U.S.C. § 1956(a)(1)(B)(i) on charges of concealment money laundering of the funds derived from wire fraud and honest services wire fraud (Count 5). Banes was also charged under 18 U.S.C. § 1957 with two more counts of transactional money laundering of the funds derived from wire fraud and honest services wire fraud (Counts 2 and 3), and one count of making false statements to a federal agent in violation of 18 U.S.C. § 1001 (Count 8). Lindsey was additionally charged with two counts of making a false tax return in violation of 26 U.S.C. § 7206(1) (Counts 6 and 7), and a superseding indictment handed down in March 2025, added a count against Banes for making a false tax return in violation of 26 U.S.C. § 7206(1) (Count 9).

Defendants filed motions to dismiss all of the money laundering charges (Counts 1-5) on grounds that the indictment does not set forth a legal theory establishing that the funds at issue were derived from wire fraud or honest

services wire fraud. Dkt. No. [34] at 10-16; Dkt. No. [36] at 1-7; Dkt. No. [42] at 9-19. Banes also argues that the conspiracy charge (Count 1) is subject to dismissal as duplicitous, Dkt. No. [42] at 6-9, and that the false-statements count (Count 8) must be dismissed because it arises from statements that are factually true, id. at 19-21. The Magistrate Judge recommends that the motions to dismiss be denied. Dkt. No. [83]. Defendants object to the Report and Recommendation so far as it recommends denying the motions to dismiss the money laundering counts. Dkt. No. [87].

**III.   DISCUSSION**

To obtain a conviction on a money laundering charge, the Government must prove that "(1) the defendant conducted or attempted to conduct a financial transaction; (2) the transaction involved the proceeds of a statutorily specified unlawful activity; (3) the defendant knew the proceeds were from some form of illegal activity; and (4) the defendant knew a purpose of the transaction was to conceal or disguise the nature, location, source, ownership, or control of the proceeds." United States v. Miles, 290 F.3d 1341, 1355 (11th Cir. 2002). To prevail on a charge of conspiracy to commit money laundering, the government must prove (1) an agreement between two or more persons to commit the money laundering offense; and (2) knowing and voluntary participation in that agreement by the defendant. United States v. Iriele, 977 F.3d 1155, 1174 (11th Cir. 2020).

Defendants raise three objections to the Magistrate Judge's recommendation to deny the motions to dismiss the money laundering counts. They argue (1) that the Magistrate Judge should have concluded that the count charging conspiracy was subject to dismissal as duplicitous because it charges two offenses in a single count, Dkt. No. [87] at 15-17; (2) that the Magistrate Judge applied the wrong law and erroneously found that the indictment sufficiently alleges that the funds at issue were derived from wire fraud, id. at 2-11; and (3) that the Magistrate Judge erroneously found that the indictment sufficiently alleges that the funds at issue were derived from honest services wire fraud, id. at 12-15. The Court addresses each objection in turn below.

**A. Whether the Conspiracy Count is Duplicitous**

Duplicity in the context of criminal pleadings refers to the improper joining of two or more distinct and separate offenses within a single count of an indictment. United States v. O'Steen, 133 F.4th 1200, 1205 n.10 (11th Cir. 2025). Defendants contend that the conspiracy count is subject to dismissal as duplicitous because it alleges two distinct statutorily specified unlawful activities—wire fraud and honest services fraud—that require different proof and involve different victims. Dkt. No. [42] at 6-9. The Magistrate Judge disagreed and recommends that the conspiracy count proceed to trial. Dkt. No. [83] at 16-17.

Defendants object to the Magistrate Judge's recommendation. Dkt. No. [87] at 15-17. They concede that a conspiracy charge can allege multiple objects and multiple crimes committed as part of the conspiracy without being duplicitous. Id. at 15-16. However, they argue that the Report and Recommendation "misses the point" of their duplicity argument: that because the conspiracy count alleges two underlying offenses, the jury could convict Defendants of money laundering without unanimously agreeing on which predicate unlawful activity supports the conviction. Id. at 16. They contend that this would stymie appellate review and invite double-jeopardy issues. Id. at 16-17.

The Court is not persuaded that these issues warrant dismissal of the conspiracy count. " '[T]o the extent the indictment present[s] any duplicity, the ambiguity could be cured through jury instructions and/or special interrogatories.' " United States v. Rives, Crim. Case No. 1:14-cr-00130-TWT-JFK-4, 2015 WL 7574759, at *18 (N.D. Ga. Sept. 15, 2015) (R&R) (quoting United States v. Campbell, No. 1:04-cr-0424-RWS, 2005 WL 6436621, at *7 (N.D. Ga. Oct. 24, 2005)), adopted at 2015 WL 7575933 (N.D. Ga. Nov. 25, 2015)); accord United States v. Pulido, 133 F.4th 1256, 1282 n.2 (11th Cir. 2025) (Rosenbaum, J., concurring) ("[A]n instruction to the jury may render a duplicitous indictment harmless."), pet. for cert. filed, Pulido v. United States, No. 25-5796 (U.S. Oct. 21, 2025). Therefore, pretrial dismissal of the count would be improper. Defendants'

objections to the recommendation to deny the motion to dismiss the conspiracy count on duplicity grounds are thus **OVERRULED**.

### B. Whether the Indictment Adequately Alleges Wire Fraud as a Statutorily Specified Unlawful Activity

At the time Defendants allegedly committed the wire fraud serving as a predicate to the money laundering charges, Eleventh Circuit precedent required proof of intent to cause pecuniary harm. See United States v. Takhalov, 827 F.3d 1307, 1312-13 (11th Cir. 2016) (holding that "a defendant 'schemes to defraud' only if he schemes to deprive someone of something of value by trick, deceit, chicane, or overreaching," but if the defendant "does not intend to harm the victim—to obtain by deceptive means, something to which the defendant is not entitled—then he has not intended to defraud the victim" (cleaned up)). In other words, a defendant could not be held to have committed wire fraud so long as the purchaser did not suffer an economic loss. See id.

That holding was later abrogated by the U.S. Supreme Court in Kousisis v. United States, where the court held that "the wire fraud statute is agnostic about economic loss" and that "a defendant violates § 1343 by scheming to obtain the victim's money or property, regardless of whether he seeks to leave the victim economically worse off." Kousisis, 605 U.S. ___, 145 S. Ct. 1382, 1392 (2025) (cleaned up). Under Kousisis, "a defendant commits federal fraud whenever he uses a material misstatement to trick a victim into a contract that requires handing over . . . money or property—regardless of whether the fraudster, who

often provides something in return, seeks to cause the victim net pecuniary loss." Id. at 1388.

The Magistrate Judge found that Kousisis applied retroactively and that the indictment set out a material misrepresentation satisfying the wire fraud statute by alleging that Defendants misled Company A into believing that its $150,000 commission payment was for Lindsey's brokerage services, not for Banes, and by alleging that Company A would not have made the payment if it had known the truth about how the money would be used. Dkt. No. [83] at 12-14. Defendants argue that the Magistrate Judge erred both by applying Kousisis and by finding that the indictment alleged a material misrepresentation. Dkt. No. [87] at 2-11.

The Court is not persuaded that the money laundering charges predicated on § 1343 wire fraud should be dismissed. The Court need not reach the Kousisis argument: under either the Takhalov standard or the Kousisis standard, the wire fraud underpinning the money laundering charges is sufficiently pleaded.

The Court is limited, at this point in the case, to determining whether "the factual allegations in the indictment, when viewed in the light most favorable to the government, were sufficient to charge the offense as a matter of law." DeVegter, 198 F.3d at 1327 (cleaned up). When " 'analyzing challenges to the sufficiency of an indictment, courts give the indictment a common sense construction, and its validity is to be determined by practical, not technical,

considerations.'" United States v. Wayerski, 624 F.3d 1342, 1349 (11th Cir. 2010). Under these standards, the factual allegations in the indictment sufficiently allege that Defendants caused Company A to suffer an economic loss.

According to the indictment, Banes personally provided information to Company A about the acreage; Banes received Company A's offer to buy the acreage; and before Banes and the rest of the JDA board voted on whether to allow the transaction that would make the sale of the land possible, Banes secretly facilitated the execution of the $150,000 "brokerage agreement" between Lindsey's company, CSL Realty, and Company A. Dkt. No. [54] ¶¶ 12-23, 26, 28. Banes and Lindsey represented to Company A that the money was for Lindsey, not for bribing Banes, yet Lindsey did little to no work to close the deal, the CSL Realty commission was not disclosed to the JDA or listed on the closing statements, and shortly after the sale closed and Lindsey received the money, she paid over $100,000 of it to Banes. Id. ¶¶ 23, 25, 26, 29-32, 34-40. Lindsey and Banes then misrepresented the nature of the payments on their taxes, and Banes made false statements to FBI agents when they questioned him about Lindsey's interactions with Company A and the JDA. Id. ¶¶ 41-49.

Viewed in the light most favorable to the government, the indictment sufficiently alleges that Banes and Lindsey communicated to Company A that it was necessary for Company A to enter into the brokerage agreement with CSL Realty to complete the sale, when in fact the brokerage agreement was

unnecessary, the services were illusory, and the "brokerage agreement" was a means of extracting $150,000 from Company A for Banes and Lindsey. Thus, the Court concludes that the indictment adequately pleads the unlawful conduct of wire fraud underlying the money laundering counts. The Court therefore **OVERRULES** the objections to the Magistrate Judge's recommendation to deny the motion to dismiss the money laundering charges on grounds that the indictment does not adequately allege underlying wire fraud.

### C. Whether the Indictment Adequately Alleges Honest Services Wire Fraud as a Statutorily Specified Unlawful Activity

The Supreme Court has held that honest services wire fraud criminalizes only schemes involving bribes or kickbacks. Skilling v. United States, 561 U.S. 358, 408-09 (2010). Defendants argue that the counts for money laundering of funds derived from honest services wire fraud must be dismissed because the facts alleged in the indictment do not show that Banes received "a thing or things of value" in exchange for "an official act" and thus establish that he took a bribe or a kickback. Dkt. No. [42] at 15-19. The Magistrate Judge disagreed. Dkt. No. [83] at 14-16.

Defendants fault this portion of the Report and Recommendation for "contain[ing] virtually no analysis." Dkt. No. [87] at 12. They argue that "even the most generous construction [of the allegations in the indictment] makes clear that Mr. Banes's vote on the sale of the Tract was not the action Ms. Lindsey was hoping to influence by sharing her commission with him." Id. They contend that

13

Banes "was voting to approve the sale regardless of whether [Lindsey] paid him," and "[w]hat [Lindsey] was hoping for . . . was for [Banes's] influence to steer Company A her way so she could benefit from the exclusive brokerage agreement." Id. at 12-14. Simply steering the contract Lindsey's way, Defendants contend, would not be an "official act." Id. at 13-14.

While a jury may ultimately be persuaded by Defendants' theory, the Court remains limited, at this point in the case, to viewing the indictment in the light most favorable to the government. DeVegter, 198 F.3d at 1327. The Magistrate Judge correctly found, under that standard, that the indictment sufficiently charged money laundering of funds derived from honest services wire fraud.

The Magistrate Judge aptly noted that § 1346—the honest services wire fraud statute—criminalizes only schemes involving bribes and kickbacks. Dkt. No. [83] at 14 (citing Skilling, 561 U.S. at 409). Thus, to sufficiently charge a violation of that statute, the indictment must allege that a public official was influenced in the performance of an official act in exchange for money or something else of value or that a public official obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts. Id. at 14-15 (citing McDonnell v. United States, 579 U.S. 550, 562 (2016); United States v. Siegelman, 640 F.3d 1159, 1171 (11th Cir. 2011)). Again, on a motion to dismiss for insufficient pleading, the Court must give the indictment a practical, common-sense construction. Wayerski, 624 F.3d at 1349. Thus, the indictment

need not use the words "bribe" or "kickback" so long as it alleges it in substance. See DeVegter, 198 F.3d at 1330 (explaining that "[l]inguistic precision is not required in an indictment" and that "allegations are sufficient if they include all elements of the offense and briefly describe the facts of the commission of the offense").

The indictment here substantively alleges that Banes received a bribe or kickback for his participation in the vote that allowed for the sale of the acreage to Company A. According to the indictment, the sale of the land to Company A was contingent on the JDA board's approval of the sale. Dkt. No. [54] ¶ 23. Banes provided information to Company A about the land and received its offer via official JDA channels. Id. ¶¶ 7, 13-16. After Banes received Company A's offer to purchase the land, he secretly facilitated the execution of the $150,000 "brokerage agreement" between Lindsey's company, CSL Realty, and Company A, and then participated as a JDA board member in the vote to allow the sale. Id. ¶¶ 17-22, 28, 29. Lindsey, meanwhile, did little to no work to close the deal, and shortly after the sale closed and she received the money, she paid over $100,000 of it to Banes. Id. ¶¶ 25, 26, 30-32, 34-40. Afterward, Lindsey and Banes misrepresented the nature of the payment on their taxes, and Banes made false statements to FBI agents when they questioned him about Lindsey's interactions with Company A and the JDA. Id. ¶¶ 41-49. Viewed in the light most favorable to the government, these allegations show that Banes schemed to accept money to

which he was not entitled in exchange for an "official act"—his participation in the vote to approve the transfer of the land that made the sale possible.

Thus, the Court concludes that the indictment adequately pleads the unlawful conduct of honest services wire fraud underlying the money laundering counts. The Court therefore **OVERRULES** that portion of Defendants' objections to the Report and Recommendation.

## IV.   CONCLUSION

In accordance with the foregoing, the Court **OVERRULES** Defendants' objections to the Magistrate Judge's Report and Recommendation. The Court has reviewed the remainder of the Report and Recommendation for clear error and finds none. Accordingly, the Court **ADOPTS** the Report and Recommendation, Dkt. No. [83], as the Order of the Court, and Defendants' motions to dismiss, Dkt. Nos. [34, 36], are **DENIED**.

The Court hereby sets Defendants' trial to begin on **Tuesday, January 27, 2026, at 9:30 AM** in Courtroom 2107, United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia. The pretrial conference is set for **Tuesday, January 20, 2026, at 10:00 AM** in Courtroom 2107. By noon on Tuesday, January 6, 2026, the parties are to file their respective motions in limine and voir dire questions. By noon on Tuesday, January 6, 2026, the Government is to file a brief statement of facts the parties can rely on for voir dire. By noon on Tuesday, January 13, 2026, the parties are to file any objections

to those items listed above. Requests to charge and verdict forms should be filed on CM/ECF and emailed to the Courtroom Deputy Clerk in Word format by noon on Friday, January 23, 2026. The time from November 5, 2025, to January 27, 2026, shall be excluded from computation under the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(7)(A), (h)(7)(B)(i), and (h)(7)(B)(iv).

The Court requires the parties to email an exhibit and witness list to the Courtroom Deputy Clerk by Friday, January 23, 2026. The list shall contain an identifying description of each exhibit to the right of the exhibit numbers. The list shall be double spaced with approximately 1.5 inches of space to the left of the number for court use. The parties are also required to deliver to chambers the morning of trial a tabbed exhibit notebook for the Court's use. Counsel shall comply with the Local Rules of this Court regarding exhibits. Any exhibit larger than 8 ½" x 11" will be returned to counsel pursuant to Rule 79.1(B)(5) of the Local Rules of this Court. Within ten (10) days following the conclusion of a trial or hearing, all parties must file photographs or other appropriate reproductions of oversized and non-documentary exhibits admitted as evidence at the trial or hearing. The parties must provide a courtesy copy of any documents e-filed just prior to trial or on any day during the course of the trial.

Courtroom 2107 is technology equipped. Any training or trial runs regarding the courtroom technology must be scheduled in advance of trial via the Courtroom Deputy Clerk. The Court will not allow time for training or trial runs

at the beginning of the trial. Any motions requesting leave to bring technology into the courtroom must be filed prior to the pretrial conference, to allow time for proper notification to the U.S. Marshals Service.

It is the responsibility of counsel to immediately notify the Courtroom Deputy if the defendant requires interpretive services for any court proceeding so that services can be arranged. It is the responsibility of counsel to arrange interpretive services for any witnesses needing assistance of an interpreter for any court proceeding.

**IT IS SO ORDERED** this 5th day of November, 2025.

_____
LEIGH MARTIN MAY
UNITED STATES DISTRICT JUDGE